UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

  v.

ONE OR MORE UNKNOWN PURCHASERS
OF SECURITIES OF MARTEK
BIOSCIENCES CORPORATION,

    Defendants.

Civil Action No. 10 cv 9527 (WHP)

ECF CASE

JURY DEMAND REQUESTED

---

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission"), for its Complaint alleges as follows:

### SUMMARY OF THE ACTION

1. This is an insider trading case involving highly profitable and suspicious purchases of the securities of Martek Biosciences Corporation ("Martek"), a Columbia, Maryland company whose stock trades on the Nasdaq Global Select Market and whose options trade on, among other places, the New York Stock Exchange ARCA, (ARCA), and International Securities Exchange, LLC (ISE) in New York, New York. The unlawful purchases of Martek securities were made through an Omnibus Account in the name of UBS LTD London Branch A/C UBS LTD A/C #7314001500, Account No. 452602040, Customer ID 980235527, 1500, P.O. Box 8098, Zurich Switzerland by One or More Unknown Purchasers ("Unknown Purchasers" or "Defendants"), in the days before the December 21, 2010 announcement that Royal DSM NV ("DSM") and Martek had entered into an agreement under which DSM would acquire all of the

outstanding common stock of Martek at a 35% premium over the previous day's closing price. There was no public information available concerning the contemplated acquisition before the Unknown Purchasers bought Martek securities.

2. On December 21, 2010, the Unknown Purchasers sold Call Options that had been acquired in the period from December 10-15, 2010. As a result, the Unknown Purchasers are in a position to realize total profits of approximately $1.2 million from the sale of the Call Options.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter pursuant to Sections 21(e), 21A, and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(e), 78u-1, and 78aa]. The Defendants have directly or indirectly made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the acts, practices, transactions, and courses of business alleged in this Complaint.

4. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain acts, practices, transactions and courses of business constituting the violations occurred in the Southern District of New York.

5. Unless restrained and enjoined, the Defendants will continue to engage in the acts, practices, transactions, and courses of business alleged in this Complaint, or in acts, practices, transactions, and courses of business of similar purport and object.

## DEFENDANTS

6. The Defendants, the Unknown Purchasers, made highly unusual and suspicious purchases of Call Options through an Omnibus Account known as UBS LTD London Branch A/C UBS LTD A/C #7314001500, Account No. 452602040, Customer ID 980235527, 1500,

2

P.O. Box 8098, Zurich Switzerland ("UBS LTD Omnibus Account"). UBS records do not identify the beneficial owners of the account in which the Martek options orders were placed.

## RELEVANT ENTITIES

7. **Martek Biosciences Corporation** is a Delaware corporation with its headquarters in Columbia, Maryland. It engages in the development and commercialization of of nutritional products from microbial sources. The common stock of Martek is registered with the Commission pursuant to Section 12(b) of the Exchange Act and its common stock trades on the NASDAQ Global Select Market under the ticker symbol MATK. Its options trade on the American Stock Exchange, (AMEX), ARCA, BATS Options, (BATS), Boston Options Exchange (BOX), Chicago Board of Options Exchange (CBOE), ISE, and the Nasdaq OMX PHLX (PHLX).

8. **Royal DSM N.V.** is a Dutch company with its headquarters in Heerlen, the Netherlands. It is a multinational chemical company which specializes in life sciences and material sciences.

9. **UBS Securities, LLC** is a registered broker- dealer with offices located in Stamford, Connecticut.

## CALL OPTIONS

10. Call options are agreements that give an investor the right (but not the obligation) to buy 100 shares of the underlying security at a specified strike price, anytime prior to a specified expiration date. Purchasers of call options typically anticipate a rise in the price of the shares of the underlying security. If the strike price of a call option is less than the current market price of the underlying security, the call is said to be in-the-money because the holder of

this call has the right to buy the stock at a price which is less than the price he would have to pay to buy the stock in the stock market. If the strike price of a call option is more than the current market price of the underlying security, the call is said to be out-of-the-money because the holder of this call has the right to buy the stock at a price which is more than the price he would have to pay to buy the stock in the stock market. If the strike price equals the current market price, the option is said to be at-the-money. An investor can realize gains from an in-the-money call option by either closing their position by selling the same call option in the options markets or exercising the call option by purchasing the 100 shares at the specified strike price and then selling those shares in the stock market.

## FACTUAL ALLEGATIONS

11. Between December 10, 2010 and December 15, 2010, the Unknown Purchasers bought 2,615 call options contracts. Through a UBS LTD omnibus account, the Unknown Purchasers bought 648 January 2011 Martek Calls with a strike price of $25; 1,193 March 2011 Martek Calls with a strike price of $25; and 774 June 2011 Martek Calls with a strike price of $30.

12. The purchase of the three series of options constituted over 90 percent of the volume of each of those series on December 10, 13, 14, and 15, 2010. Specifically, the purchases on December 10 represented 98.8% and 95.5% of the volume in the two particular options series that day. On December 13, the purchases represented 100% and 92.3% of the series volumes. On December 14, the purchases represented 92.8% of the series volumes. On December 15, the purchases represented 100% and 96.6% of the series volumes.

21. Upon information and belief, purchases of calls occurring in this manner are often based on information obtained as a result of breaches of fiduciary duty.

## CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Promulgated Thereunder

22. Paragraphs 1 through 21 are realleged and incorporated by reference.

23. Upon information and belief, at the time the Defendants purchased Martek call options as set forth above, they were in possession of material, nonpublic information about Royal DSM's intent to acquire Martek. The Defendants (a) knew, or recklessly disregarded the fact, that their trading was in breach of a fiduciary duty or similar duty of trust and confidence owed to the shareholders of Martek or Royal DSM or to the source from whom they received the material, nonpublic information; and/or (b) knew or should have known that material, nonpublic information about the contemplated acquisition had been communicated to them, in breach of a fiduciary or similar duty of trust and confidence.

24. Upon information and belief, any and all material nonpublic information that defendants received concerning Martek, as set forth above, was disclosed in exchange for a personal benefit that benefited the communicator of such information.

25. By reason of the conduct described above, the Defendants, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or of the mails, or of any facility of any national securities exchange, directly or indirectly (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts,

practices, or courses of business which operate or would operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

26. By reason of the foregoing, the Defendants, directly and indirectly, violated Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### **PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that the Court enter judgment:

(a)     permanently enjoining the Defendants from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5];

(b)     ordering the Defendants to disgorge all illicit trading profits resulting from conduct alleged in this Complaint, along with prejudgment interest thereon;

c)  ordering the Defendants to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and

(d)  granting such other and further relief as the Court deems just and appropriate.

Dated: December 22, 2010

Respectfully submitted,

*/s/ Richard Hong*

Richard Hong (RH 4939)
Melissa Robertson
Louis J. Gicale, Jr.
Attorney for Plaintiff
Securities and Exchange Commission
Division of Enforcement
100 F Street, N.E.
Washington, D.C. 20549-4010
Telephone: (202) 551-4431
Facsimile:  (202) 772- (9246)
e-mail: hongr@sec.gov